UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY MARIE UNDERHILL,

              Plaintiff,          CIVIL ACTION NO. 13-cv-11952

    vs.

                             DISTRICT JUDGE STEPHEN J. MURPHY, III

COMMISSIONER OF          MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

              Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kelly Underhill seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 15). Plaintiff filed a Reply to Defendant's Motion. (Docket no. 16.) The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.    RECOMMENDATION:

The Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 12) be GRANTED IN PART and DENIED IN PART and that Defendant's Motion for Summary Judgment (docket no. 15) be DENIED. The undersigned recommends that this matter be remanded so that the ALJ can provide good reason for giving little weight to Dr. Barkway's opinion or, in the alternative,

to afford Dr. Barkway's opinion controlling weight and to conduct any additional, necessary analysis.

## II.  PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of December 2, 2009, and an application for Supplemental Security Income with a protective filing date of February 25, 2010, alleging in both that she had been disabled since August 1, 2009, due to pain throughout her body, but primarily located in her hands and knees, and depression and anxiety related to her pain.  (*See* TR 25, 30.)  The Social Security Administration denied benefits.  (*See* TR 25.)  Plaintiff requested a *de novo* hearing, which was held on January 19, 2012, before Administrative Law Judge (ALJ) Craig Petersen, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (TR 25-35.)  The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review.  The parties then filed their instant Motions.

## III.  PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.  Plaintiff's Testimony

Plaintiff was 42 years old at the time of the administrative hearing and 40 years old at the time of alleged onset.  (*See* TR 48.)  Plaintiff testified that she had a high-school education, but she missed half of her senior year of high school when she was hospitalized due to rheumatoid arthritis.  (TR 49-50, 59.)  At the time of the hearing, she lived with her husband and her two sons, ages 13 and 17.  (TR 48.)  Plaintiff testified that he husband worked as a truck driver but that she had not worked since her date of alleged onset.  (TR 48, 49, 50.)  Plaintiff told the ALJ that she had been

2

suffering from arthritis for years, but it "just got worse" on (or around) August 1, 2009, her alleged

onset date. (TR 51.) Plaintiff acknowledged that she worked for a few weeks in 2010 as a

telemarketer, but she said that she stopped because he hands went numb. (TR 51-52.) She indicated

that her prior work included mostly computer work and general office work. (*See, generally*, TR

52-55.)

Plaintiff testified that her physical impairments included "chronic pain throughout [her]

body," which included swelling of her hands and knees. (TR 59.) She added that she was "starting

to get deformalities (sic) in [her] fingers" and that her "feet are starting to get like [her] hands." (TR

59-60, 61.) She noted that her pain was generally a six or a seven on a ten-point scale but that it

would go up to a nine a couple of days each week. (TR 67.) Plaintiff described her fingers:

> They are swollen at every joint. My fingers are pointing down to the ground. I
> cannot straighten them at all. There are some mornings when I cannot even open my
> hands. I can, days (sic) I cannot even make a fist.

(TR 66.) Plaintiff told the ALJ that her legs sometimes went numb, causing her to fall over, and that

she could only lift 10 to 15 pounds. (TR 62.) She stated that she could only stand 10 to 30 minutes

and that she could only walk about a quarter of a block. (TR 62.) Additionally, she could only sit

for about 20 minutes. (TR 63.) Plaintiff testified that she missed four to five days of work each

month because of her symptoms. (TR 66-67.) She further testified that in addition to her physical

symptoms, she suffered from depression and anxiety, mostly in the form of panic attacks. (TR 60.)

She indicated that her pain typically triggered her panic attacks, which occurred two or three times

a week and lasted about a half hour. (TR 61.)

Plaintiff told the ALJ that she took Cymbalta and Xanax for her depression and anxiety,

Prednisone for her arthritis, and Elavil for sleeplessness. (TR 60, 70.) She testified that her

medications made her lightheaded, and the Xanax would sometimes put her to sleep; additionally,

her prednisone caused swelling in her face.  (TR 62.)  Plaintiff further noted that her medication made it difficult for her to focus.  (TR 64.)  She testified that she used Paraffin wax to treat her aches, which reduced her pain from a nine on bad days back down to a six or a seven.  (TR 68.)  Plaintiff also acknowledged that although her doctor "prescribed low-level aerobic exercises," she did not do them because she "[could not] do all the moving."  (TR 74.)  Specifically, Plaintiff told the ALJ that her doctor had told her to try to do exercises three or four times a week for about 15 minutes, but she "[could not] put [her] hands on the floor or straighten them," she "[could not] grip a weight," and her knees, back, and neck hurt so bad that she "[could not] stand it."  (TR 74-75.)

Plaintiff testified that she could not button her clothes or tie her shoes, and she could not take care of her children without help.  (TR 63.)  She told the ALJ that her niece came over "all the time" to help out around the house.  (TR 68.)  Plaintiff testified that she used to like to camp, bike, walk, and scrapbook, but she could no longer do so because of her arthritis.  (TR 71.)  She further testified that she did not participate in any social activities and that while she went to church, she could only do so two or three times a month.  (TR 72.)

The ALJ asked Plaintiff about her application for unemployment insurance benefits with the State of Michigan after she left her job in August of 2009.  (TR 65.)  Plaintiff told the ALJ that she started receiving benefits about six weeks after she left her job and that she "would say [she received them for] maybe three months, three to four months."  (TR 65-66.)  She added, however, that she was "not really sure on that."  (TR 66.)

The ALJ additionally asked Plaintiff about a recent trip that she had taken with her husband to Tennessee or one of the Carolinas.  (TR 72.)  Plaintiff testified that she had ridden with her husband, a truck driver, and that the trip "was terrible."  (TR 72.)  She told the ALJ that she "had to get help in the truck" and that "80% of the time [she] was in the sleeper."  (TR 72.)  She added

4

that she would "never go with him again."  (TR 72.)

### B.    Medical Record

Defendant asserts that "[t]he ALJ's recitation of the relevant medical evidence . . . is sufficiently detailed and need not be presented (to the Court)."  (Docket no. 15 at 6.)  Plaintiff sets forth a detailed recitation of her medical history. (Docket no. 12 at 5-10.)  Plaintiff's recitation of the medical record does not contradict that which is set forth by the ALJ.  Therefore, the Court will incorporate by reference the medical record as set forth by the ALJ (TR 31-33) and as set forth by Plaintiff (docket no. 12 at 5-10.)  The Court has, however, conducted an independent review of Plaintiff's medical record and will incorporate comments and citations as necessary throughout this Report and Recommendation.

### C.    The Vocational Expert

The ALJ first asked the VE to consider a hypothetical person of Plaintiff's age, education, and vocational experience who could "lift and carry up to 20 pounds occasionally, ten pounds frequently, [could] occasionally push and pull ten pounds, [could] stand and walk up to six hours in an eight-hour work day, [and could] sit up for six hours out of an eight-hour work day with normal breaks."  (TR 78.)  The ALJ added that the individual "must have a sit-stand option at will," and that the person could only occasionally stoop, kneel, crouch, and crawl.  (TR 78-79.)  Further, this individual could only occasionally climb ramps or stairs but could not climb ropes, ladders, or scaffolds.   (TR 79.)   The ALJ also asked the VE to assume that the individual must avoid unprotected heights and could not forcefully grip, grasp, push, or pull, but the individual could frequently finger and feel bilaterally with the upper extremities.  (TR 79.)  The ALJ noted that this individual was not hindered by any communication, visual, or social limitations. (TR 79.) The ALJ asked the VE whether such a person could perform any of Plaintiff's past jobs; the VE testified that

5

such a person could perform Plaintiff's past work as a daycare provider, a human resources assistant, a switchboard operator, a clerical assistant, a legal secretary, and a receptionist. (TR 79.)

The ALJ then asked the VE to assume that the same individual was limited to lifting up to ten pounds occasionally; was limited to simple, routine, and repetitive tasks; and was limited to work involving simple, work-related decisions with few, if any, workplace changes. (TR 79.) The VE testified that such an individual could perform Plaintiff's past work as an office assistant but could also perform work as an information clerk or a call out operator. (TR 79-80.) The VE testified that there were 21,000 jobs nationally and 450 jobs in the State of Michigan for these two positions. (TR 80.) The ALJ then asked the VE to assume that the same individual would be off task 25% of the time or more during an work day and would miss three or more days per month due to her limitations. (TR 80.) The VE testified that such a limitation would be work preclusive. (TR 80.)

Plaintiff's attorney asked the VE to consider Plaintiff's allegations that she could not use her hands for either fine manipulation or for grasping, turning, or twisting objects and what effect such a limitation would have on her ability to work. (TR 81-82.) The VE testified that such a limitation would preclude Plaintiff from performing any of her past work and from performing any of the positions that she had previously listed for the ALJ. (TR 82.) She stated, though, that there would be "other jobs" that such a person could do, including a surveillance monitor and a bus monitor, with 36,380 such jobs nationally and 970 such jobs in Michigan. (TR 82.)

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2012; that she had not engaged in substantial gainful activity since August 1, 2009, the date of her alleged onset; and that she had severe central pain syndrome, depression, and anxiety. (TR 27.) The ALJ further found that her impairments did not meet or equal those listed in the Listing of

6

Impairments. (TR 28-29.) The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not credible and that Plaintiff had the ability to perform sedentary work with the following additional limitations:

> [The claimant] must be allowed to alternate between sitting and standing at will; she can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs, but she can never climb ladders, ropes, or scaffolds; she must avoid unprotected heights; she cannot perform forceful gripping, grasping, pushing, or pulling, but she can finger and feel frequently with her bilateral upper extremities; and she retains the mental capacity to perform simple, routine, and repetitive tasks that involve simple work-related decision, with few, if any, workplace changes.

(TR 29-33.) The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 34-35.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from August 1, 2009, through the date of the ALJ's decision. (TR 34-35.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

## B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial

8

evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded because the ALJ (1) erred in assessing Plaintiff's credibility; (2) erred in applying the treating physician rule with regard to Plaintiff's treating physician, Dr. Barkway; (3) failed to account for Plaintiff's difficulty in using her hands for fingering and feeling when determining Plaintiff's RFC; and (4) erred when he determined that there were a significant number of jobs in the national economy that Plaintiff could perform. (Docket no. 12.)

### 1.    The ALJ's Assessment of Plaintiff's Credibility

2:13-cv-11952-SJM-MKM   Doc # 17   Filed 08/07/14   Pg 10 of 19   Pg ID 749

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But Credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

10

Here, Plaintiff asserts that the ALJ's analysis with regard to her credibility is flawed because the ALJ mischaracterized her testimony and made inappropriate assumptions with regard to specific facts.  (*See id.* at 12-15.)  Specifically, Plaintiff challenges the ALJ's assessment of her testimony with regard to Dr. Monrad, her treating rheumatologist; the ALJ's assessment of her trip to South Carolina and Tennessee with her husband; and the ALJ's findings with regard to her unemployment benefits.  (*Id.*)

Plaintiff first points to the ALJ's characterization of her testimony with regard to Dr. Monrad as follows: "The claimant acknowledged that Dr. Monrad has told her to engage in physical exercise to ameliorate her symptoms and that she has not done so."  (*Id.* at 12 (quoting TR 32).)  Plaintiff argues that this "was *not* [her] testimony," and claims that while Dr. Monrad indicated that she should engage in "low level sustained exercise," she is not able to do so because of her condition. (*Id.* (emphasis in original).)  Thus, Plaintiff contends, "this is a more than appropriate explanation for her inability to continue with this sort of exercise."  (*Id.*)

At her hearing, Plaintiff testified that Dr. Monrad had told her to try to do exercises three or four times a week for about 15 minutes, but she "[could not] put [her] hands on the floor or straighten them," she "[could not] grip a weight," and her knees, back, and neck hurt so bad that she "[could not] stand it."  (TR 74-75.)  Even assuming, *arguendo*, that Plaintiff's explanation is "more than appropriate," Plaintiff's argument fails because the ALJ did not mischaracterize her testimony: Plaintiff testified that her doctor told her to do exercises three or four time a week, and she has not done so.  Instead, in substance, Plaintiff's argument relies on the premise that the ALJ should have accepted her rationale and determined that Dr. Monrad's prescription for physical exercise was inappropriate.  The Court should not set aside the ALJ's determination for his decision against such a finding.

11

Second, Plaintiff takes issue with the ALJ's determination that her contraction of poison ivy while "helping her husband cut down trees" and her trip with her husband to South Carolina and Tennessee hurt her credibility. (*See* docket no. 12 at 12-13.) Plaintiff asserts that she "might have been performing nonexertional activities" when she contracted poison ivy, and she points to her testimony regarding how "terrible" her trip with her husband was to argue that this testimony confirms her other testimony with regard to her condition. (*Id.*) Again, however, nothing in the ALJ's opinion implies that he considered these activities with any more weight or assumption than their bare facts: Plaintiff "contracted her poison ivy while helping her husband cut down trees, and she also accompanied her husband on a long trip to South Carolina and Tennessee." (TR 32.) The ALJ merely considered these facts (and many others) as part of his overall determination that he was "unable to reconcile the divergence between the claimant's testimony regarding her physical limitations and the objective evidence of record as a whole," which is exactly the type of analysis the ALJ is required to conduct. (*See* TR 32.)

Finally, Plaintiff argues that the ALJ erred when he "suggested that plaintiff misrepresented 'under oath, of how long she collected unemployment benefits.'" (Docket no. 12 at 13 (quoting TR 32).) The ALJ, however, made no such finding. Contrary to Plaintiff's contention, the ALJ found that Plaintiff's credibility was undermined not by her testimony but by her contrary representations to the State of Michigan that "she was able to, available for, and actively seeking suitable full-time work" and to the Social Security Administration that she was disabled and unable to work. (*See* TR 32); *see also* Mich. Comp. Laws § 421.28(1)(a). The ALJ only mentioned Plaintiff's testimony in holding the her "misstatement" "exacerbated" his other findings. That is, the ALJ acknowledged that Plaintiff made a misstatement; he did not find that she had lied under oath, as Plaintiff implies. Therefore, Plaintiff's Motion with regard to the ALJ's credibility determination should be denied.

12

## 2.     The ALJ's Assessment of the Medical Opinions of Record

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).  It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician.  *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008).  Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight."  *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).  The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant.  20 C.F.R. § 404.1527(c)(1).  The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist.  20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."  20 C.F.R. § 404.1527(c)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).  If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and

13

the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Additionally, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir.2008). There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

Plaintiff acknowledges that the ALJ gave reasons for not affording Dr. Barkway's opinion controlling weight, but she argues that these reasons were not "good" reasons, in accordance with the treating physician rule. (Docket no. 12 at 15.) In short, Plaintiff asserts that the ALJ relied on the opinions of Dr. Monrad and Dr. Lazzara, the consultative examiner, to find that Dr. Barkway's

14

opinion was not supported by the objective medical evidence of record.  Plaintiff contends that allowing such a decision to stand would nullify the treating physician rule because "'the treating source's opinion would have controlling weight only when the other sources agreed with that opinion.'" (*Id.* (quoting *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013)).)

Defendant asserts that the ALJ did not err because (1) the portion of Dr. Barkway's opinion regarding disability was a determination reserved for the commissioner; (2) the ALJ considered the "supportability, consistency, and specialization prongs of the regulation," when he noted that Dr. Barkway's opinion was inconsistent with that of Dr. Monrad, who is a specializing rheumatologist; (3) the ALJ found that Dr. Barkway's opinion was inconsistent with the objective findings of Drs. Lazzara and Monrad; and (4) the ALJ credited the functional capacity assessments of Drs. Lazzara and Monrad and Dr. Abbasi, the state agency medical consultant.  (Docket no. 15 at 18, 19.) Moreover, Defendant argues, "the ALJ acknowledged [Dr. Monrad's] abnormal findings concerning Plaintiff's bilateral hands," but "Plaintiff's assertion that those findings support Dr. Barkway's extreme restrictions . . . is entirely speculative."  (*Id.* at 19.)

The undersigned agrees with Plaintiff.  While articulated in a variety of manners, Defendant's assertion merely restates multiple times that the ALJ found that Dr. Barkway's opinion was not consistent with the findings of Drs. Monrad and Lazzara.  And to the extent that Defendant argues that the ALJ also considered Dr. Abbasi's opinion, Plaintiff is correct that Dr. Abbasi's opinion is based entirely on a review of the other medical opinions; moreover, the ALJ did not discuss Dr. Abbasi's opinion with regard to the weight he afforded to Dr. Barkway's opinion. (*See* TR 33.)  In relevant part, the ALJ stated as follows:

> . . . [Dr. Barkway's] indication of rheumatoid arthritis is also contrary to the conclusion of the consulting rheumatology specialist, Dr. Monrad.  Furthermore, Dr. Barkway has opined that the claimant is completely unable to walk and completely

15

unable to user her hands or fingers for find manipulations or grasping, turning, and twisting objects. This portion of Dr. Barkway's opinion is inconsistent with the objective findings of Drs. Lazzara and Monrad that the claimant has mildly impaired dexterity, but her grip strength is intact and physically activity is advised. Because Dr. Barkway's opinion is not consistent with the objective medical evidence of record as a whole, the undersigned gives it little weight.

(TR 33.) Contrary to Defendant's assertion, the ALJ did not consider any of the factors set forth in the regulations, and he did not provide good reason for his determination. Instead, the ALJ plainly stated that he discounted Plaintiff's treating physician's opinion because it conflicted with two other opinions of record. Such a rationale is improper, and this matter should be remanded for proper consideration of Dr. Barkway's opinion.

### 3.    The ALJ's Determination of Plaintiff's RFC

Plaintiff contends that the ALJ's Determination of Plaintiff's RFC is flawed[1] because it does not account for "difficulties with Plaintiff's use of her hands for fingering and feeling." (Docket no. 12 at 18-19.) In support of this assertion, Plaintiff notes that Dr. Barkway "indicated that [she] was completely incapable of fingering," Dr. Monrad "noted significant deformities with the fingers of both of [her] hands that would inevitably impact significantly upon her abilities in this regard," and even Dr. Lazzara "noted at least mildly impaired dexterity bilaterally." (*Id.*) The Court need not address this issue if it remands for a proper consideration of Dr. Barkway's opinion. Nevertheless, the undersigned agrees that the ALJ failed to properly account for Plaintiff's use of her hands for fingering and feeling. Contrary to all of the opinions of record, the ALJ specifically found that Plaintiff "can finger and feel frequently with her bilateral upper extremities." (TR 29.) And while Defendant is correct that the ALJ pointed to some evidence contradicting these opinions, the ALJ

---

[1]Plaintiff argues that the ALJ's hypothetical questions to the VE are flawed for the same reasons.

16

cannot reject these opinions in their entirety and substitute his own determination. *See* Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

### 4.    The ALJ's Step-5 Determination

Finally, Plaintiff argues that the ALJ erred when he found that 450 jobs existing in the State of Michigan was a significant number of jobs that the Plaintiff could perform. (Docket no. 12 at 20-21.) In making this assertion, Plaintiff acknowledges that the Sixth Circuit has found 1,350 jobs in a region to be sufficient to support an ALJ's finding. *See Hall v. Bowen*, 837 F.2d 272, 274-75 (6th Cir. 19888). But Plaintiff asserts that the court's holding in *Hall* was with regard to a nine-county region surrounding Dayton, Ohio, not with regard to an entire state, as is the case here. (Docket no. 12 at 21.) Likewise, Plaintiff acknowledges that the Sixth Circuit has found even lower numbers of regional jobs sufficient to support and ALJ's determination where the number of jobs nationally was significant. *See Harmon v. Apfel*, 168 F.3d 289 (6th Cir. 1999) (holding that 700 local jobs was sufficient where there were 700,000 such jobs nationally); *Steward v. Sullivan*, 904 F.2d 708 (6th Cir. 1990) (holding that 125 local jobs was sufficient where there were 400,000 jobs nationally). Here, Plaintiff notes, the VE testified that there were only 21,000 jobs nationally. (TR 80.)

As Defendant argues, however, the ALJ's decision was harmless error. When questioning the VE, Plaintiff's attorney asked whether there were any jobs that the hypothetical individual could perform with additional, dexterity-related restrictions. The VE stated that such a person could work as a surveillance monitor and a bus monitor, with 36,380 such jobs nationally and 970 such jobs in Michigan. (TR 82.) Thus, it stands to reason that a person without such limitations could also perform these jobs. Therefore, while the ALJ only included in his decision the VE's testimony with regard to 450 jobs locally and 21,000 jobs nationally, the VE testified that such an individual could perform work that included over 1,300 jobs locally and over 57,000 jobs nationally. Thus, the Court

17

should deny Plaintiff's Motion with regard to this issue.

## VI.      CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 12) should be GRANTED IN PART and DENIED IN PART and Defendant's Motion for Summary Judgment (docket no. 15) should be DENIED.  The undersigned recommends that this matter be remanded so that the ALJ can provide good reason for giving little weight to Dr. Barkway's opinion or, in the alternative, to afford Dr. Barkway's opinion controlling weight and to conduct any additional, necessary analysis.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length

18

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


Dated: August 6, 2014                     s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE

### **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel
of Record on this date.

Dated: August 6, 2014                     s/ Lisa C. Bartlett
                                          Case Manager


19